January 16, 2024

<u>Via ECF</u>

The Honorable Peter H. Kang
United States Magistrate Judge
San Francisco Courthouse
450 Golden Gate Ave.
San Francisco, CA 94102

Re: <u>*In re DMCA Subpoena to X Corp. dba Twitter*</u>, Misc. Case No. 3:23-mc-80294-PHK

Dear Judge Kang:

Movant Cognosphere Pte. Ltd. ("Cognosphere") and interested party X Corp. ("X Corp.") jointly submit this letter in connection with the subpoena issued by this Court on November 7, 2023 pursuant to 17 U.S.C. §512 *et seq*., which is attached hereto as **Exhibit A** (the "Subpoena"). The parties met and conferred in person on December 28, 2023, and determined no agreement or resolution could be reached without consideration by the Court.

**1.      Cognosphere's Statement**

Cognosphere Pte. Ltd. ("Cognosphere") is an international publisher of video games, including the highly popular game *Genshin Impact*. *Genshin Impact* is updated periodically with substantial new game content, including new characters, artwork, and other features, which typically are not available to the public until an officially scheduled release. Cognosphere protects its exclusive rights in *Genshin Impact* by, among other things, submitting copyright infringement notifications to website platforms whose users post materials infringing *Genshin Impact*, particularly where it consists of so-called "leaked" unreleased copyrighted material.

**The Subpoena.**  On November 6, 2023, Cognosphere applied for a subpoena to X Corp., the successor to Twitter, Inc., pursuant to 17 U.S.C. §512(h), which permits "[a] copyright owner or a person authorized to act on the owner's behalf [to] request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer….." *See* Dkt. 1 (the "Request"). The Request sought information concerning four Twitter accounts suspected to be under common control, supported by copies of takedown notices pursuant to 17 U.S.C. §512, and a declaration attesting the information sought would only be used for the purpose of protecting Cognosphere's rights under the Copyright Act. The Court issued the Subpoena on November 7, and it was served on X's corporate agent that same day. For purposes of this letter, Cognosphere has offered to focus on only *two* of the listed accounts, **@HutaoLover77** and **@FurinaaLover**.

**The Infringing Accounts.**  The two Twitter accounts here at issue (the "Accounts") infringed Cognosphere's exclusive rights by making numerous posts of "leaked" content, including artwork and game visuals, from unreleased updates to *Genshin Impact*. To Cognosphere's knowledge, the account holder(s) submitted no counter-notifications claiming the removals were the result of "mistake or misidentification," 17 U.S.C. §512(g)(3)(c)—nor has X Corp. so claimed—and the web page for one states: "***Account suspended**… **X suspends accounts which violate the X Rules***." *See* https://twitter.com/HutaoLover77. While active, the Accounts garnered

thousands of followers, and the posts were viewed thousands of times. The notices supplied in the Request were only a subset of the notices submitted to Twitter concerning the Accounts.

**Twitter's Non-Compliance.** On November 21, 2023, X Corp. responded with written objections stating, *inter alia,* that it would not produce the user information for any accounts specified in the Subpoena. As a primary reason, X Corp. asserted it had not been shown that "the Court considered and imposed the First Amendment safeguards required before a litigant may be permitted to unmask the identity of an anonymous speaker." The parties subsequently met and conferred, and Cognosphere supplied additional context and information concerning the Accounts. However, on December 15, 2023, X Corp. stated it would stand on objections and not comply unless required to do so by the Court. It affirmed this position at the in-person meeting held on December 28, but neither X Corp. nor any Twitter account holder has moved to quash or modify the subpoena. X Corp. has refused the proposal that it respond as to the two Accounts.

**Cognosphere's Position.** "[T]o the extent that anonymity is used to mask copyright infringement . . . it is unprotected by the First Amendment." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010). Courts in this District and elsewhere accordingly decline heightened First Amendment scrutiny when an individual "effectively use[s] his privacy interest to operate anonymously on the Internet to hide copyright infringement." *See Strike 3 Holdings, LLC v. Doe*, 2018 WL 10604533, at *2 (N.D. Cal. Sept. 14, 2018). Indeed, X Corp.'s adherence to its "anonymous speaker" objection departs from its own recent practice, where it has ultimately agreed to produce the same types of user information in response to prior DMCA subpoenas. *See* N.D. Cal. Case Nos. 4:23-MC-80033 through 80035 (filed February 8, 2023). As at least one of the Accounts has been suspended, Twitter apparently agrees that account was either violating its rules, the law, or both.

Cognosphere's Request complied with requirements for obtaining a DMCA subpoena under 17 U.S.C. §512(h). It included the sworn declaration referenced above and copies of DMCA notifications asserting under penalty of perjury that each was being submitted on the good faith belief that the use of the material in the manner complained of was not authorized by the copyright owner, their agent, or the law. 17 U.S.C. §512(c)(3)(A)(v).

X Corp. incorrectly relies on a distinguishable and non-binding opinion, *In Re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868 (N.D. Cal. 2022) ("Bayside"), to claim that the Subpoena need not be complied with unless it receives special First Amendment scrutiny for restriction of "anonymous speech." There is no legal or factual basis for this. In *Bayside*, Twitter, Inc. moved to quash a DMCA subpoena procured by a "mysterious entity" after an anonymous user made posts, accompanied by photographs, "criticiz[ing] … a private-equity billionaire." *Id.* at 874. *Bayside* turned on that user's right to anonymously make public criticisms and commentary, and on copyright claims that appeared but a thin pretext. It did not involve the unauthorized dissemination of copyrighted commercial content, let alone ***unpublished*** content. And here, neither Twitter nor any user has moved to challenge the Subpoena's validity.

There is no protected First Amendment right to reproduce and publicize another's unpublished copyrighted material under the cover of fair use. Courts in this Circuit, following *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539 (1985), have routinely held that distribution of unpublished materials is a strong factor weighing against fair use, and that publication of such materials cannot hide behind labels of "reporting" or "newsworthiness." *See Id.* at 564 (unpublished status a "critical element" of a work's nature); *Monge v. Maya Magazines, Inc.*,

688 F.3d 1164, 1173-75, 1183 (9th Cir. 2012); *see also McGucken v. Pub Ocean Ltd.*, 42 F. 4th 1149, 1160-61, 1164 (9th Cir. 2022) (even if deemed "news reporting," posting of photos was not transformative or fair); *Worldwide Church of God v. Phila. Church of God, Inc.,* 227 F.3d 1110, 1117-18 (9th Cir.2000) (unauthorized use may be commercial without financial gain).

The *Bayside* court admitted that while "it may be true that the fair use analysis wholly encompasses free expression concerns in some cases," it happened not to be true in that particular scenario. *Bayside*, 608 F. Supp. 3d at 878. This Subpoena requires no separate First Amendment analysis, which in any event would only support Cognosphere, as there are no "significant First Amendment interests at stake" (*see id.* at 881) in the dissemination of unreleased copyrighted material. To the extent the Court applies the fair use factors identified in 17 U.S.C. §107, they come out unequivocally in favor in Cognosphere: (1) the "purpose and character of the use" was to post unreleased materials, without transformation, to large numbers of viewers; (2) the content was unpublished and creative; (3) entire images were displayed, and in multiple posts; and (4) and the unauthorized posts unquestionably disrupt Cognosphere's ability, as the owner of exclusive rights, to make "first publication" of copyrighted material on its own terms. *See Monge,* 688 F.3d 1164, 1180-82.

Cognosphere respectfully requests the Court direct X Corp. to comply with the Subpoena as to the two referenced Accounts, @HutaoLover77 and @FurinaaLover, within 14 days.

2.     **X Corp.'s Statement**

**Introduction.** Cognosphere is attempting to unmask third party, anonymous speakers via a subpoena issued under the DMCA. X Corp., however, is not in a position to determine whether Cognosphere has made the required constitutional and evidentiary showings to unmask those speakers, and has thus stood on its timely[1] free speech objections, such that the parties can obtain a determination from the Court. *See generally*, *In* re *DMCA § 512(H) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 877-879 (N.D. Cal. June, 21, 2022) (recognizing that First Amendment safeguards apply in the context of a DMCA subpoena) ("*Bayside*"). Indeed, the Court has, and cannot be divested of, authority to: (i) assess whether Cognosphere has made a prima facie showing, with evidence, of the elements of its anticipated copyright claim sufficient to satisfy any First Amendment free speech safeguards applicable to the anonymous speakers; and (ii) balance Cognosphere's purported need for discovery against the anonymous users' privacy rights under the California Constitution. *Id.*

X Corp. cannot be required to perform those judicial functions upon mere receipt of a DMCA subpoena, and thus asks the Court to engage in the relevant analyses and decide these issues. X Corp. otherwise takes no position on Cognosphere's request, and has explained all of this to Cognosphere during the meet and confer process.

**First Amendment Standard for Unmasking an Anonymous Speaker.** Anonymous speech on the Internet is protected by the First Amendment of the United States Constitution and the right of privacy in article I, section 1 of the California Constitution. *See Buckley v. American*

---

[1] Cognosphere's DMCA subpoena was served on November 7, 2023, with a response deadline of November 22, 2023. X Corp. requested a two week extension of time to respond, and Cognosphere responded "that should be workable" but only if X Corp. committed to making a "responsive production."

3

*Constitutional Law Foundation, Inc.*, 525 U.S. 182, 199–200 (1999); *Reno v. ACLU*, 521 U.S. 844, 870 (1997); *Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1164, 1170-72 (2008); *Rancho Publ'ns v. Super. Ct.*, 68 Cal. App. 4th 1538, 1540–41 (1999); *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism'") (citation omitted). U.S. Const., amend. 1; Cal. Const. art. 1, § 1. It follows that, before a service provider[2] may be compelled to unmask an anonymous speaker "[i]n any action predicated on anonymous speech, regardless of legal theory, the plaintiff should not be able to discover the speaker's identity without first making a prima facie showing that the speech in question is actionable." *Glassdoor, Inc. v. Super. Ct.*, 9 Cal. App. 5th 623, 634 (2017) (affirming the Krinsky requirements and the standard for protecting online speakers). California courts have described "the required quantum of evidence" as evidence "that will support a ruling in favor of [the plaintiff] if no controverting evidence is presented…it may be slight evidence which creates a reasonable inference of fact sought to be established but need not eliminate all contrary inferences." *Id.* at 405.

Under this test, Cognosphere must demonstrate, with evidence, a prima facie case for its copyright claim. *Bayside*, 608 F. Supp. 3d at 877-879 ("First, the party seeking the disclosure must demonstrate a prima facie case on the merits of its underlying claim. Second, the court balances the need for the discovery against the First Amendment interest at stake. This resembles the analysis courts around the country have employed when adjudicating motions that would result in the unmasking of anonymous speakers") (citations omitted).

Whether Cognosphere has made a sufficient showing based on the record in this proceeding is squarely within the province of the Court, not X Corp. *See generally, Remington v. Mathson*, 2017 U.S. Dist. LEXIS 96050, at *18 (N.D. Cal. June 20, 2017) ("allegations in the complaint are not evidence"); *Henderson v. Lamarque*, 2002 U.S. Dist. LEXIS 10636, at *9 (N.D. Cal. June 6, 2002) ("allegations in the operative complaint will not do because they are not admissible evidence"); *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012) ("declarations not based on personal knowledge are inadmissible"); *In re Zoom Video Commc'ns Inc. Privacy Litig.*, 525 F. Supp. 3d 1017, 1042 (N.D. Cal. 2021) (same).

To be clear, and as X Corp. explained to Cognosphere during the meet and confer process, X Corp. has not taken the position that Cognosphere will never be entitled to the data it seeks. X Corp. has maintained that a Court needs to decide these issues.

Cognosphere attempts to mischaracterize X Corp.'s position as arguing for the DMCA subpoena to be subject to "special First Amendment scrutiny for restriction of 'anonymous speech.'" That is incorrect. X Corp. has merely taken the position that the standard First Amendment analysis for seeking to unmask anonymous speakers applies in this context. That is entirely consistent with the published *Bayside* decision, which recognizes that, while the DMCA "provides its own procedures through which copyright holders can subpoena internet service providers," that does not support deviating from the requirement that the subpoenaing party "make a prima facie

---

[2] A service provider, such a X Corp., has standing to assert the rights of account holders. *See, e.g., Yelp Inc. v. Super. Ct.*, 17 Cal. App. 5th 1, 13 (2017); *Glassdoor, Inc.*, 9 Cal. App. 5th at 629.

showing on the merits of their claim; and [] balance the equities, weighing the potential harm to the party seeking disclosure against the speaker's interest in anonymity, in light of the strength of the underlying claim." *Bayside*, 608 F. Supp. 3d at 876-877.

There is nothing "special" about applying that standard here, nor is there anything "special" about X Corp. standing on its objection such that the Court can make the required determinations. As the *Bayside* decision recognizes, the DMCA "does not compel (or permit)" a DMCA subpoena to "divest[] the court of authority to consider the merits of the copyright claim or issues of First Amendment privilege when faced with a motion to compel or quash a DMCA subpoena." *Id.* at 877. A judicial determination is precisely what the Parties seek by way of this joint letter, and any holding that Cognosphere's DMCA subpoena can bypass judicial scrutiny in light of X Corp.'s free speech objections would "raise[] serious constitutional concerns." *Id.*

**Balancing Test Under the California Constitutional Right of Privacy.** The California Constitutional right of privacy requires a subpoenaing party to make a showing that there is a compelling need for the discovery that outweighs the privacy rights of the speakers. *Digital Music News LLC v. Super. Ct.*, 226 Cal. App. 4th 216, 230 (2014), disapproved on other grounds in Williams v. Superior Court, 3 Cal.5th 531, 557, fn. 8 (2017) ("*Digital Music*"); *see also Williams*, 3 Cal. 5th at 557 ("Invasions of fundamental interests must be supported by a compelling need that overcomes the grave invasion of privacy"); *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 982 (N.D. Cal. 2015) (speaker's "First Amendment rights outweigh[ed] plaintiffs' need for the requested information[]").

Under this factor, Cognosphere must establish it has a compelling need for the user data it seeks, which could thereby unmask users' identities. X Corp. does not take a position on whether Cognosphere has satisfied this requirement, and respectfully leaves it to the Court to analyze.

**Conclusion.** X Corp. respectfully requests that the Court consider the First Amendment safeguards required before Cognosphere is permitted to unmask the identity of the anonymous speakers, and evaluate whether there is a compelling need for the discovery that outweighs the privacy rights of the speakers under the California Constitutional right of privacy.

3.   **Cognosphere's Reply.**

A duly issued DMCA subpoena "authorize[s] and order[s]" a service provider to disclose a user's identifying information. 17 U.S.C §512(h)(3). ***Without challenging the Subpoena, or the facts above,*** X Corp. takes the position that ***any*** DMCA subpoena issued concerning individuals using its service to infringe copyright, no matter the harm, anywhere in the world, must be subject to judicial review, and that infringers must be protected as "anonymous speakers."[3] X's extraordinary position is not supported by the language or spirit of the DMCA, which was intended to provide a speedy and simple mechanism to identify infringers. Under X's theory, every statutorily authorized subpoena, even without any formal challenge, must be subject to a protracted balancing exercise by the very Court that issued it before a service provider is required to comply. That is certainly not what Congress intended; nor is it constitutionally required, particularly in the circumstances here.

---

[3] The posts' main language is Japanese, and X Corp. has not asserted the user(s) to be in the U.S. or a U.S. citizen. *See In re Takada,* 2023 WL 1452080, at *2-3 (N.D. Cal. Feb. 1, 2023).

5

Respectfully submitted,

| | |
|---|---|
| JAMES D. BERKLEY | JON HAWK |
| MITCHELL SILBERBERG & KNUPP LLP | MCDERMOTT WILL & EMERY LLP |
| | |
| By: /s/ James D. Berkley | By: /s/ Jon Hawk |
| James D. Berkley | Jon Hawk |
| *Attorney for Cognosphere Pte. Ltd.* | *Attorney for X Corp. dba Twitter* |

**Attestation Regarding Signatures-Local Rule 5-1(i)**

    I, James D. Berkley, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: January 16, 2024                By: /s/ James D. Berkley
                                                 James D. Berkley
                                                 Attorney for Cognosphere Pte. Ltd.

16162144.2