UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COGNOSPHERE PTE. LTD.,<br><br>　　　　　Movant,<br><br>　　v.<br><br>X CORP.,<br><br>　　　　　Respondent. | Case No.  23-mc-80294-PHK<br><br>**ORDER DENYING X CORP.'S MOTION TO QUASH DMCA SUBPOENA [17 U.S.C. § 512(h)]**<br><br>Re: Dkts. 7 and 17 |

Now before this Court is a discovery dispute regarding a subpoena issued under the Digital Millenium Copyright Act ("DMCA") by Movant Cognosphere Pte. Ltd. ("Cognosphere") to Respondent X Corp. (formerly Twitter, Inc.) seeking information about the identities of the persons responsible for four anonymous accounts of X Corp.'s application, due to alleged copyright infringement by those accounts. X Corp. objects to the issuance of the subpoena and moves to quash the subpoena. [Dkts. 7 and 17]. The Court finds this matter suitable for determination without oral argument. *See* Civ. L.R. 7–1; *Maximized Living, Inc. v. Google*, Inc., No. C11-80061 MISC CRB, 2011 WL 6749017, at *1 (N.D. Cal. Dec. 22, 2011). After carefully considering the initial petition and subsequent letter briefs, the Court **DENIES** X Corp.'s request to quash the subpoena.

### BACKGROUND

The following facts are derived from the filings in the docket of this case. [Dkt. 1]. Cognosphere operates an online video gaming service, titled *Genshin Impact*. [Dkt. 1 at 2]. X Corp. is the successor corporation to the online social media communication service provider formerly known as Twitter. *Id.* at 1. Cognosphere initiated this matter in order to issue a subpoena to X Corp. pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(h). *Id.*

Specifically, Cognosphere seeks to discover the true identities of several account holders of X Corp. named @HutaoLoverGI, @GIHutaoLover, @HutaoLover77, and @FurinaaLover (collectively, "Hutao"). *Id.*; *see also* [Dkt. 3 (issued subpoena)]. Cognosphere alleges that these accounts are involved in distributing material which infringe Cognosphere's copyrights on works relating to its video game *Genshin Impact*. *Id.* at 1–2. The alleged copyright infringement consists of posting unauthorized copies of "artwork and game visuals, from unreleased updates to *Genshin Impact*." [Dkt. 7 at 1].

By the issued subpoena, Cognosphere seeks "[i]nformation[s], including name(s), address(es), telephone number(s), e-mail address(es), and IP address(es), or other information within [X Corp.'s] possession, custody or control, sufficient to identify the [allegedly infringing] Twitter/X user(s)." [Dkt. 1 at 4]. Further, Cognosphere alleges that it has "reason to believe [that the subject accounts] are operated or have been operated by the same individual or under common control." *Id.* at 1. Pursuant to X Corp.'s stated policies, the account holder(s) would have received notice of the subpoena. [Dkt. 17 at 3 n.2 (citing obsolete web page)]; *see also* https://help.x.com/en/rules-and-policies/x-legal-faqs (last visited September 17, 2024) ("By default, X will attempt to notify the reported account holder(s) of the existence of a legal request pertaining to the account(s) if we are not otherwise prohibited from doing so.").

On November 6, 2023, Cognosphere initiated the instant matter to seek issuance of the subpoena pursuant to the DMCA. *Id.* On November 7, 2023, the Clerk of Court issued the subpoena. [Dkt. 3]. On January 16, 2024, the Parties filed a joint discovery letter brief, detailing a dispute over the subpoena. [Dkt. 7]. In summary, X Corp. objects to the issued subpoena and asserts objections based on the First Amendment against revealing information which would identify the users of the Hutao accounts. *Id.* On February 12, 2024, the Court ordered a joint supplemental letter brief, which the Parties filed on March 15, 2024. [Dkts. 14 and 17]. After reviewing the briefing and materials submitted, the Court has determined that this dispute is amenable to resolution without the need for oral argument.

For the reasons set forth herein, X Corp.'s objections to the subpoena and X Corp.'s motion to quash the subpoena on First Amendment grounds is **DENIED.**

**MAGISTRATE JUDGE JURISDICTION**

As an initial matter, this Court has jurisdiction to hear and decide this matter because both Parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). *Washington v. Kijakazi*, 72 F.4th 1029, 1035 (9th Cir. 2023) (citing *Roell v. Withrow*, 538 U.S. 580, 585 (2003); 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73(a)); Dkts. 12 and 13 (consent forms).

**LEGAL STANDARD**

Section 512(h) is entitled "[s]ubpoena to identify infringer." The DMCA's purpose is to identify copyright infringers who use the services of an internet service provider, and thus the DMCA sets forth a procedure for issuance of a subpoena to an internet "service provider [to] expeditiously disclose to the copyright owner or person authorized by the copyright owner the information required by the subpoena, *notwithstanding any other provision of law* and regardless of whether the service provider responds to the notification." 17 USCA § 512(h)(5) (emphasis added). Section 512(h)(6) states that "the remedies for noncompliance with the subpoena, shall be governed to the greatest extent practicable by those provisions of the Federal Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena duces tecum." 17 U.S.C. § 512(h)(6). Rule 45 in particular governs the enforcement of a subpoena *duces tecum* and provides for a motion to compel and for a motion to quash, as well as remedies available for both types of motions. Fed. R. Civ. P. 45.

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested, particularly with regard to subpoenas. *See* Fed. R. Civ. P. 45(d)(3); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery").

A recipient of a DMCA subpoena may object to the subpoena on the basis that issuing the subpoena: (1) would require disclosure of material protected by the First Amendment; and (2) would

3

conflict with the Federal Rules of Civil Procedure. *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876–877 (N.D. Cal. 2022). Here, X Corp. is not objecting to the subpoena on any grounds based on the Federal Rules of Civil Procedure, and the motion to quash asserts no such arguments. [Dkts. 7, 17, *passim*]. Thus, the issue here is whether X Corp.'s First Amendment objection is sustainable or not, and thus whether the subpoena should be quashed on those grounds (or enforced or modified).

"[A]n author's decision to remain anonymous, like other decisions concerning omissions or additions to the contents of a publication, is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). The Ninth Circuit has recognized that protecting an author's First Amendment right to speak anonymously applies equally to online discourse. "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (alterations in original) (quoting *McIntyre*, 514 U.S. at 341–42). Accordingly, when deciding whether to quash or enforce a DMCA subpoena that seeks the identity of an anonymous online speaker, courts consider the First Amendment implications of enforcing that discovery.

## DISCUSSION

### I. THE "SPEECH" AT ISSUE HERE IS NOT CORE FIRST AMENDMENT EXPRESSION

The First Amendment rights to anonymous speech are not absolute. *Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1154 (N.D. Cal. 2013). There is no First Amendment right to commit copyright infringement. *See, e.g.*, *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 555–56, 569 (1985). Here, the speech which prompted the DMCA subpoena at issue is alleged copyright infringement. Cognosphere argues, and some courts have acknowledged the argument, that because there is no First Amendment right which shields copyright infringement, in and of itself, there is no protectable speech at issue with regard to a DMCA subpoena. *See* Dkt. 7; *In re Verizon Internet Servs., Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C. 2003).

4

Further, there is an argument that the conduct at issue is not the target of the DMCA subpoena directly, because the subpoena seeks information about the true identities of the account holders (and does not seek the content itself of any online speech by those account holders), which is information already in the possession of the internet service provider. *Verizon*, 257 F. Supp. 2d at 260. That is, because the account information was voluntarily provided by the account holders to the internet service provider, there is an argument that this account holder information is not itself the subject of First Amendment protections.

However, precedent from this Court and other courts have rejected the notion that there should be no First Amendment analysis in evaluating a motion to quash (or enforce) a DMCA subpoena. *See Signature*, 941 F. Supp. 2d at 1153 (collecting cases) ("in accordance with the practice of courts applying the DMCA, the Court concludes that constitutional objections to a DMCA subpoena may properly be raised in a motion to quash."); *Verizon*, 257 F. Supp. 2d at 260 ("the Court concludes for present purposes that there is some level of First Amendment protection that should be afforded to anonymous expression on the Internet, even though the degree of protection is minimal where alleged copyright infringement is the expression at issue.")

Accordingly, the degree of First Amendment scrutiny in a DMCA subpoena matter, such as the instant case, depends in part on the type of conduct or speech at issue. The courts have identified "core" First Amendment expression to be political speech and religious speech. *McIntyre*, 514 U.S. at 347 ("When a law burdens core political speech, we apply 'exacting scrutiny,' and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest."); *Verizon*, 257 F. Supp. 2d at 259–60 (collecting cases); *Signature Mgt. Team*, 941 F. Supp. 2d at 1158. Here, the Hutao accounts' alleged posting of unauthorized copies of Cognosphere's *Genshin Impact* artwork and materials is neither political nor religious speech. *Cf. Baugher v. GoDaddy.com LLC*, No. MC-19-00034-PHX-JJT, 2021 WL 4942658, at *3 (D. Ariz. Oct. 22, 2021) (courts should scrutinize First Amendment issues with additional caution when religion or politics is involved.). Like the P2P file sharing in *Sony*, the sharing of unauthorized copies of someone else's copyrighted works on X Corp.'s service "qualifies as speech, but only to a degree." *Sony*, 326 F. Supp. 2d at 564; *see also Signature Mgt. Team*, 941 F. Supp. 2d at 1157 (although the "speech in question, posting a verbatim

5

copy of a copyrighted work, was neither political nor religious, it at least raises significant constitutional issues.").

Accordingly, the Court has determined that the DMCA subpoena here is properly subject to analysis under the First Amendment, even if the speech is not "core" First Amendment expression. The First Amendment inquiry consists of two steps: "[f]irst, the party seeking the disclosure must demonstrate a *prima facie* case on the merits of its underlying [(in this case, copyright)] claim[;]and [s]econd, the Court balances the need for the discovery against the First Amendment interest at stake." *Twitter*, 608 F. Supp. 3d at 876; *accord Perry v. Schwarzenegger*, 591 F.3d 1147, 1161–65 (9th Cir. 2010). In that balancing inquiry, "Courts consider four factors: whether '(1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source.'" *Castro v. Doe*, No. 23-MC-80198-TSH, 2023 WL 9232964, at *5 (N.D. Cal. Oct. 12, 2023) (quoting *Rich v. Butowsky*, No. 20-MC-80081-DMR, 2020 WL 5910069, at *3–4 (N.D. Cal. Oct. 6, 2020)).

## II.  WHETHER COGNOSPHERE HAS DEMONSTRATED A *PRIMA FACIE* CASE OF COPYRIGHT INFRINGEMENT

X Corp. does not dispute enforcement of the subpoena on the basis that the subpoena conflicts with the Federal Rules of Civil Procedure. *See generally* Dkts. 7 and 17. The issue then is whether the subpoena should be quashed due to First Amendment issues. Under the two-part First Amendment analysis, X Corp. objects to the subpoena, first, on the grounds that Cognosphere has not sufficiently demonstrated a *prima facie* case of copyright infringement; and, second, on the grounds that Cognosphere has not demonstrated that the need for discovery outweighs the First Amendment interests at stake. [Dkt. 17 at 2–3].

As to the first issue, establishing a *prima facie* case of a copyright violation is a two-part inquiry: "(1) [claimant] must show ownership of the allegedly infringed material[;] and (2) [claimant] must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013

(9th Cir. 2001), *as amended* (Apr. 3, 2001), *aff'd sub nom. A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002), *and aff'd sub nom. A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002); *accord In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 876. Pursuant to applicable legal standards and in light of the record in this case, as discussed below the Court finds Cognosphere has sufficiently shown a *prima facie* case of copyright violation.

### A. Whether Cognosphere has demonstrated ownership of the copyrighted material.

First, for a claimant to show ownership of the allegedly infringed material, the claimant must "plausibly allege it owns a valid copyright registration for its work." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019) (citation omitted). Further, "while one can own a copyright and have property rights in a work without a registration, the owner needs to register the copyright before he can sue for infringement." *Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747, 759 (E.D. Cal. 2021) (citing 17 U.S.C. §§ 408(a), 411(a); *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, Ltd. Liab. Co.*, 925 F.3d 1140, 1144 (9th Cir. 2019); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 678 (9th Cir. 2014)).

Here, Cognosphere claims ownership of copyrights over specific aspects ("artwork and game visuals, from unreleased updates to *Genshin Impact*") of *Genshin Impact* and claims ownership of a copyright for the entirety of the game. [Dkts. 1, 7, and 17]. X Corp. does not dispute Cognosphere's ownership of copyrights for *Genshin Impact* as a whole or for its specified sub-parts. [Dkts. 1, 7, and 17]. Where an accused infringer does not contest ownership or registration of copyrights for a video game, allegations of infringement pertaining to specific aspects of that game (such as characters, backgrounds, and various artwork for game visuals) are sufficient to "plausibly allege[] 'ownership of a valid copyright [on those specific aspects].'" *See Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1172 (N.D. Cal. 2015) (gaming company sufficiently alleged copyright ownership to proceed in an infringement claim because copyright ownership of the entire game was not in dispute, and the gaming company identified specific alleged copyright infringement(s)) (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

Here, the Court finds that Cognosphere satisfies the requirement of demonstrating ownership of copyrights for the allegedly infringed material. There is no dispute that Cognosphere has registered copyright for the *Genshin Impact* game as a whole. Cognosphere alleges that the Hutao accounts posted materials on the X Corp. platform which infringe Cognosphere's copyrights for specific aspects of the game *Genshin Impact*. [Dkt. 1 at 2]. This case is closely analogous to *Blizzard*, in which a gaming company asserted ownership of copyrights for specific aspects of a game, as well as copyright ownership covering the game as a whole. *Blizzard Ent., Inc.*, 149 F. Supp. 3d at 1172.

X Corp.'s primary argument against the "ownership" prong of a *prima facie* case of copyright infringement is a legal (and not factual) argument, specifically that using an attorney declaration as the evidentiary basis for the allegation is insufficient. [Dkt. 17 at 2]. Here, X Corp. argues that "an attorney declaration cannot lay the proper foundation for such factual assertions." *Id.* X Corp.'s position is essentially that an attorney declaration or affidavit is, in and of itself, improper or somehow insufficient under the Federal Rules of Evidence to establish facts necessary for this Court to decide a discovery dispute. At a general level, X Corp.'s argument rests on a legally unsupported premise. Pretrial motions, and discovery motions in particular, are often (if not almost exclusively) decided based on facts or evidence presented by affidavits (and often attorney affidavits). *See* R. Haydock, *Fundamentals of Litigation Practice*, Part 3 (Discovery Practice), Chapt. 12 (Discovery Planning and Limitations), at Introduction ("The party who wants information from the other party who refuses to or fails to timely and property provide that information can … Serve the necessary set of motion documents which ***typically include . . . An affidavit*** supporting the factual statements necessary to win."); *see, e.g., Cole v. Copan*, 485 F. Supp. 3d 243, 255 (D.D.C. 2020) (denying motion for discovery because movant "failed to submit an affidavit in support of his discovery motion"). The Federal Rules of Civil Procedure provide the authority for this Court to grant a motion to compel compliance with a subpoena or to quash a subpoena. Fed. R. Civ. P. 45(d)(2)(B)(i), (d)(3)(A). And this Court's Local Rules require that "[e]ach motion ***must*** be accompanied by affidavits or declarations" and that "[f]actual contentions made in support of or in opposition to any motion ***must be supported by an affidavit or declaration***." N.D. Cal. Civ. L.R.

8

7-2(d), 7-5(a) (emphasis added). Accordingly, X Corp.'s argument that an attorney affidavit is in adequate to support the motion here is not supported by federal law or procedure.

X Corp. cites several cases in an attempt to support the argument that ownership of the copyrighted materials cannot be established by the affidavit here: (1) *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 222–223 (9th Cir. 2013); (2) *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012); (3) *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1042 (N.D. Cal. 2021). These cases are inapposite and thus, as discussed below, X Corp. has not adequately rebutted the *prima facie* showing of a copyright infringement claim on the grounds asserted here.

First, in *Muniz*, the court was deciding a fee award and, in reversing the trial court, the Ninth Circuit found an attorney declaration to be insufficient basis alone to award fees, based on a hearsay objection. *Muniz*, 738 F.3d at 222–223. The analysis in *Muniz* is not applicable here, because the determination of a *prima facie* case is not a final determination on the merits, whereas in *Muniz* the fee award was final. Further, Federal Rule of Evidence 1101(d)(3) states that the Federal Rules of Evidence do not apply to "miscellaneous proceedings" (and provides a non-exhaustive list of such proceedings). *See* Fed. R. Evid. 1101(d)(3). The instant proceeding (a motion to quash a DMCA subpoena) may be viewed as such a miscellaneous proceeding, in which case the hearsay rules would not apply here. Even if Rule 1101's exception did not apply, the *Muniz* opinion's application of the hearsay objection is inapplicable here. While there may be good reason to require more than hearsay to support a final decision on a fee award, those same considerations regarding hearsay evidence are of lesser weight in this situation, where only a non-final determination is undertaken. Further, X Corp. has not made a sufficient showing that any hearsay in the declaration is inadmissible due to lack of sufficient guarantees of trustworthiness under the residual hearsay exception, in any event. *See* Fed. R. Evid. 807(a).

Second, in *Hexcel Corp.*, the court rejected the attorney declarations because they were "narrow, conclusory denials, insufficient to create a genuine issue of material fact against [] voluminous evidence [to the contrary]." *Hexcel Corp.*, 681 F.3d at 1063–1064. The *Hexcel Corp.* procedural posture is completely different from this matter. At this stage of this case, all that is

required is to determine whether Cognosphere established ownership of copyrighted material. Unlike in *Hexcel Corp.*, the Court is not tasked with evaluating competing evidence and, with regard to ownership of copyrighted material here, there is no "voluminous evidence to the contrary." Finally, the Court has reviewed the attorney declaration submitted here, and, unlike the declaration in *Hexcel Corp.*, the attorney declaration is neither narrow nor conclusory in establishing ownership. [Dkt. 1-1].

Third, the *In re Zoom Video Commc'ns Inc. Priv. Litig.* Court found the attorney declaration inadequate due to its conclusory nature and certain technical defects. *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d at 1042–1043. The situation here is not analogous. There is no showing that the attorney declaration suffers from sufficiently serious technical defects to warrant rejecting the declaration here. And, as discussed above, the declaration here is not conclusory, unlike the situation in both in *In re Zoom Video Commc'ns Inc. Priv. Litig.*, and *Hexcel Corp.* Accordingly, none of the cases cited by X Corp. support the legal argument sufficiently to warrant rejecting the declaration at issue here.

Tellingly, X Corp. does not expressly attempt to show that Cognosphere's supporting declaration includes hearsay, conclusory statements, or technical defects. [Dkts. 7 and 17]. To the extent X Corp. asserts that attorney declarations in and of themselves are improper bases to establish ownership of copyrighted material, such a sweeping argument is incorrect and not supported by the cases cited. Indeed, in much more directly applicable cases, other courts have relied on hearsay attorney declarations to conclude that the copyright owner has made out a *prima facie* case of copyright infringement. *See, e.g., Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1157 (N.D. Cal. 2013).

### B. Whether Cognosphere has demonstrated that the accused infringers have violated Cognosphere's copyrights.

In order to succeed in showing a *prima facie* case, Cognosphere must "demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Recs., Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001); *accord In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at. "Under Section 106, a copyright holder has the

exclusive rights to reproduce, distribute, publicly display, perform, and create derivative works of the copyrighted work. Direct copyright infringement does not require intent or any particular state of mind." *Strike 3 Holdings, LLC*, 2021 WL 4924850, at *2 (citing *Fox Broad. Co. Inc. v. Dish Network, LLC*, 905 F. Supp. 2d 1088, 1098–99 (C.D. Cal. 2012)).

Here, Cognosphere has submitted a declaration asserting that account holders here have posted material which infringes Cognosphere's copyrights related to *Genshin Impact*. [Dkt. 7 at 2]. Cognosphere has submitted evidence that the accused account holders have publicly displayed copies of images and materials for unreleased updates of the *Genshin Impact* game. [Dkt. 1 at 1, 8–9]. Because copyright owners have the exclusive right to "display the copyrighted work publicly," the assertion of direct copyright infringement here is straightforward. 17 U.S.C § 106.

Furthermore, while "fair use" could theoretically be a defense to a charge of copyright infringement, X Corp. does not meaningfully challenge Cognosphere's contention that the alleged copyright infringement does not constitute fair use. [Dkts. 7 and 17]. Cognosphere argues persuasively that "the use here (distributing unreleased video game content) is plainly not fair use—and even X does not argue otherwise." Dkt. 17 at 4 (citing Dkt. 7 at 3–5).

In light of the analysis above, the Court finds that Cognosphere has demonstrated that the accused account holder(s) of the X Corp. Hutao accounts have violated at least one of Cognosphere's exclusive rights under the Copyright Act. Accordingly, in light of the totality of circumstances above and under applicable legal standards, the Court finds that Cognosphere has made out a *prima facie* case of copyright infringement.

**III.    WHETHER THE NEED FOR DISCOVERY OUTWEIGHS ANY FIRST AMENDMENT INTERESTS**

The final issue in the First Amendment analysis is to determine whether the need for discovery outweighs any First Amendment interests. *Twitter*, 608 F. Supp. 3d at 876. As discussed above, this is inquiry relies on four factors: (A) whether the subpoena was issued in good faith; (B) whether the information sought relates to a core claim or defense; (C) the identifying information is directly and materially relevant to that claim or defense; and (D) whether information sought after is sufficient to establish or to disprove that claim or defense is unavailable from any other source.

11

1  *Castro*, 2023 WL 9232964, at *5; *Rich*, 2020 WL 5910069, at *4 (citing *Doe v. 2TheMart.com Inc.*,
2  140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001)). "This is a 'high[ ] standard,'" *In re Anonymous*
3  *Online Speakers*, 661 F.3d 1168 (9th Cir. 2011), and the factors are weighed 'based on the
4  circumstances of a given case[.]'" *Castro*, 2023 WL 9232964, at *5 (quoting *Rich*, 2020 WL
5  5910069, at *4; *Sines v. Kessler*, 2018 WL 3730434, at *13 n.16 (N.D. Cal. Aug. 6, 2018)). For the
6  following reasons, the Court finds Cognosphere's need for discovery outweighs the asserted First
7  Amendment interests.

8        **A.**     **Whether the subpoena was issued in good faith**

9        Good faith is "'weighed based on the circumstances of a given case[.]'" *Castro*, 2023 WL
10 9232964, at *5 (citations omitted). As discussed above, courts have recognized that, if a user
11 account remains anonymous in order to facilitate copyright infringement, such speech is not
12 protected by the First Amendment. *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 882
13 (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010)). If a *prima facie* case of
14 copyright infringement has been shown (as has been done here), that *prima facie* showing is a
15 circumstance which weighs in favor of discovery of the true identities of the alleged infringer(s),
16 absent convincing reasons to the contrary. *Id.* at 877–888.

17       As discussed above, Cognosphere has demonstrated a *prima facie* case of copyright
18 infringement. Cognosphere seeks the identities of the anonymous user(s) of the Hutao X Corp.
19 accounts for the purpose of protecting Cognosphere's intellectual property rights under 17 U.S.C.
20 § 101. [Dkt. 1 at 2 ¶¶11–16]; [Dkt. 1 at 8–9]. Cognosphere's subpoena is directly connected to its
21 routine business operations for (and its intellectual property rights protecting) the *Genshin Impact*
22 game. *Castro*, 2023 WL 9232964, at *5. Indeed, X Corp. does not argue that the subpoena was
23 issued in bad faith and has not presented any evidence to rebut that the subpoena was issued in good
24 faith. An owner of intellectual property rights seeking evidence to enforce those rights, in a
25 circumstance of what appears to be direct copyright infringement typical of piracy, is a hallmark of
26 good faith.

27       X Corp. relies on *Baugher*, 2021 WL 4942658, and, *In re Reddit, Inc.*, No. 24-MC-80005-
28 TSH, 2024 WL 477519 (N.D. Cal. Feb. 7, 2024), to support its motion to quash the subpoena. [Dkt.

17 at 1]. However, both *Baugher* and *Reddit* applied the balancing inquiry between First Amendment interests and the need for discovery, and both Courts found that establishing a *prima facie* case of copyright infringement should weigh in favor of discovery absent other convincing reasons. *Baugher*, 2021 WL 4942658 at *5; *Reddit*, 2024 WL 477519 at *3–5. Further, the application of the balancing test in *Reddit* does not compel the same result here because the factual situation is distinguishable. In *Reddit*, because the party seeking the subpoena already had relevant information, the additional information sought was not essential for commencing litigation, which defeated any compelling reasons for the subpoena. *Reddit*, 2024 WL 477519 at *3–5. The situation here is the opposite: Cognosphere is not seeking "additional" information, but rather is seeking information necessary to start any litigation or enforcement proceedings (*i.e.*, the identities of the persons behind the Hutao accounts).

Accordingly, the Court finds that the subpoena was issued in good faith.

**B.    Whether the information sought is directly and materially relevant to a core claim or defense, and whether such information is unavailable from any other source.**

The Court next turns to the remaining First Amendment factors. First, it is apparent here that the information sought is directly and materially relevant to a core claim. *Castro*, 2023 WL 9232964, at *5 (citations omitted). "Only when the identifying information is needed to advance core claims or defenses can it be sufficiently material to compromise First Amendment rights." *2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1096. Here, Cognosphere seeks the identity of the anonymous speaker(s) behind the Hutao accounts, in order to even begin to pursue a copyright infringement claim against those people(s). That information is materially relevant, if not critical to the claim, because without the information, Cognosphere has no starting point for whom to name as a defendant. Indeed, Cognosphere has submitted the statutorily required declaration "that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title [the Copyright Act]." *See* 17 U.S.C. § 512(h)(2)(C); Dkt. 1 at 2 ¶¶ 11–16.

Further, the information sought by the subpoena does not appear to be available from any other source. X Corp. does not argue that Cognosphere could find the true identities of the person(s)

behind the Hutao accounts through some other source or mechanism. [Dkts. 7, 17 *passim*]. While Cognosphere has not addressed whether it has sought or exhausted other potential sources for the identifying account holder information at issue, as a practical matter the Court recognizes that there are likely few, if any, reasonably available sources other than X Corp. for information on the identities of X Corp. account holders. Indeed, "[a] higher standard for unmasking a non-party witness exists than for **unmasking a potential defendant** because–unlike the need to identify a potential defendant–litigation can often continue without interfering with a non-party witness's First Amendment right to anonymity." *In re Reddit, Inc.*, 2024 WL 477519, at *3 (citing *2TheMart.com Inc.*, 140 F. Supp. 2d 1088) (emphasis added).

Based on the circumstances of this case, the Court finds that the need for discovery outweighs any First Amendment interests.

### IV. WHETHER THE ANONYMOUS SPEAKERS HAD ADEQUATE NOTICE TO DEFEND THEIR ANONYMITY

The Parties do not focus their disputes over whether or not the account holders should be parties to this matter. However, the Court is cognizant that precedent has recognized that "when adjudicating a subpoena [] that would reveal the identity of an anonymous speaker, a court should [first] notify the speaker and provide them with an opportunity to (anonymously) defend their anonymity." *Twitter, Inc.*, 608 F. Supp. 3d at 876.

Here, the record indicates that X Corp.'s policies would have resulted in notice of the subpoena being sent to the account holder(s) for the four identified accounts. [Dkt. 17 at 3 n.2]. Neither Party has argued that this dispute is inappropriate for resolution absent the presence of the user(s) of the named Hutao accounts. As noted, X Corp.'s stated policies indicate that the account holders for the Hutao accounts at issue would have received notice from X Corp. of the DMCA subpoena here. The Court notes that no attorney has entered appearance on behalf of the holder(s) of the named accounts.

The fact that the account holder(s) have not appeared in this action does not defeat justiciability and does not impact evaluation of the issues. As recognized by other courts, X Corp.'s interests are generally aligned with its users with regard to anonymity and thus, on behalf of its

users, X Corp. may adequately raise First Amendment interests in opposing enforcement of the subpoena. "The Ninth Circuit has accordingly recognized that internet platforms can assert the First Amendment rights of their users, based on the close relationship between the platform and its users and the 'genuine obstacles' users face in asserting their rights to anonymity." *Twitter*, 608 F. Supp. 3d at 878 (quoting *In re Grand Jury Subpoena*, No. 16-03-217, 875 F.3d 1179, 1183 n.2 (9th Cir. 2017)). Accordingly, the absence of the actual anonymous speakers here "does not prevent the Court from considering First Amendment interests when adjudicating the motion." *Id*. at 878.

## CONCLUSION

For all the reasons discussed herein, the Court overrules X Corp.'s objections under the First Amendment to the DMCA subpoena issued by Cognosphere and thus the Court **DENIES** X Corp.'s motion to quash the subpoena.

Finally, the Court notes that X Corp. has expressed the view that, in the face of a DMCA subpoena, X Corp. is unable to comply with the subpoena on its own volition, and that X Corp. is somehow required to file a motion to quash (or force the party seeking discovery to file a motion to enforce the subpoena) in virtually every instance. *See* Dkt. 7 at 3 ("X Corp., however, is not in a position to determine whether Cognosphere has made the required constitutional and evidentiary showings to unmask those speakers, and has thus stood on its timely free speech objections, such that the parties can obtain a determination from the Court. [. . .] X Corp. cannot be required to perform those judicial functions upon mere receipt of a DMCA subpoena, and thus asks the Court to engage in the relevant analyses and decide these issues. X Corp. otherwise takes no position on Cognosphere's request[.]") (footnote omitted). A subpoena is, itself, a court Order. Counsel for X Corp. have ethical and professional duties to assert objections and refuse compliance with a subpoena only when well-grounded and justified, and they have duties not to unnecessarily multiply the proceedings. *See* Fed. R. Civ. P. 11; *see also* Fed. R. Civ. P. 1 advisory committee's note to 2015 amendment; Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment ("Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37. . . . The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney

to stop and think about the legitimacy of a discovery request, a response thereto, or an objection. The term 'response' includes answers to interrogatories and to requests to admit as well as responses to production requests. If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse."). The Federal Rules of Civil Procedure contemplate that discovery matters will generally be self-effectuating by the Parties without the need for constant court intervention. Accordingly, to the extent X Corp. and its counsel indicate in the briefing that X Corp. must virtually always move to quash a DMCA subpoena, that position is not well-supported by citation to law. As with other discovery disputes, parties like X Corp. and Cognosphere may reasonably meet and confer, and then resolve any disputes by submitting a stipulation and proposed Order. There is nothing in the text of the DMCA which prohibits reasonable resolution of DMCA subpoena disputes, in appropriate circumstances, without the need for a contested motion. Where X Corp. is presented with a DMCA subpoena which credibly and reasonably seeks information relating to accounts accused of facially undeniable direct copyright infringement, such as the instant matter, the Court expects that X Corp. and its able counsel (both in-house counsel directing this matter and outside counsel of record) will respond and seek collaborative resolution appropriately to seek the economical, efficient, and reasonable determination of DMCA actions such as the instant matter.

**IT IS SO ORDERED.**

Dated: September 18, 2024

_____
PETER H. KANG
United States Magistrate Judge